NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4332
_____

THOMAS BUZZERD; KRISTI COURTNEY,
                                        Appellants

v.

FLAGSHIP CARWASH OF PORT ST. LUCIE, INC.;
U-HAUL CO. OF FLORIDA; U-HAUL CO. OF ARIZONA;
U-HAUL INTERNATIONAL, INC.; AMERICO

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 06-cv-00981)
District Judge: Honorable Thomas I. Vanaskie

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on October 4, 2010

Before: SCIRICA, FUENTES, and JORDAN, Circuit Judges.

(Opinion Filed: October 18, 2010)

_____

OPINION OF THE COURT

_____

FUENTES, Circuit Judge:

This action arises out of Appellants' contention that they experienced cognitive and behavioral problems as a result of carbon monoxide exposure that occurred when they drove a U-Haul truck from Florida to Pennsylvania. The District Court granted the defendants' motion for summary judgment, concluding that the testimony of Appellants' four expert witnesses was inadmissible and that Appellants had thus failed to raise a genuine factual issue as to whether their injuries were caused by carbon monoxide exposure in the U-Haul truck. We conclude that the District Court did not abuse its discretion in so ruling and will affirm.[1]

## I.

Because we write for the parties, we discuss the facts only to the extent necessary for resolution of the issues raised on appeal. In November 2004, Thomas Buzzerd and Kristi Courtney rented a U-Haul truck from Flagship Carwash of Port St. Lucie in order to move from Florida to Pennsylvania. During the thirty-hour drive, Buzzerd and Courtney experienced headaches, nausea, disorientation, and confusion, and Buzzerd had hallucinations that there were deer on the road. Upon their arrival, the two went to sleep, thinking that they were merely fatigued, but they awoke feeling ill. Buzzerd went to work the next day, but by that evening both still felt unwell and they went to the emergency room at Tyler Memorial Hospital. At the hospital, the preliminary diagnosis was carbon monoxide exposure. Although carboxyhemoglobin tests were ordered to test

---

[1] The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1332. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

for carbon monoxide exposure, the results of these tests did not appear in the hospital records; carbon monoxide exhale breath tests were within normal limits. Buzzerd and Courtney were administered oxygen, given Tylenol, and were discharged. Both allegedly experienced cognitive and behavioral changes thereafter.

One year later, Buzzerd and Courtney visited Dr. William Jeffreys, a neurologist. Dr. Jeffreys found that various objective measures to test for carbon monoxide exposure—including MRIs, CT scans, and EEG tests—were normal for both Buzzerd and Courtney. Dr. Jeffreys referred Appellants to Dr. Driscoll, a neuropsychologist. Dr. Driscoll diagnosed Buzzerd with a cognitive disorder and adjustment reaction involving depressed mood, and he diagnosed Courtney with a cognitive impairment; Dr. Driscoll attributed these conditions to carbon monoxide exposure based upon Appellants' description of the drive and their symptoms. Subsequently, Dr. Jeffreys diagnosed Buzzerd with encephalopathy and he diagnosed Courtney with personality and behavioral problems; as with Dr. Driscoll, Dr. Jeffreys attributed these conditions to carbon monoxide exposure as a result of the temporal link between the drive and the onset of the symptoms as reported by Buzzerd and Courtney.

Buzzerd and Courtney filed suit in Pennsylvania state court, and Defendants timely removed the case to federal court on grounds of diversity. Defendants moved for summary judgment, arguing that Buzzerd and Courtney failed to show that their injuries were caused by carbon monoxide exposure in the truck because the testimony of their expert witnesses was inadmissible under Rule 702, Fed. R. Evid., and Daubert v. Merrell

-3-

Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  The District Court, after conducting a

Daubert hearing, agreed with Defendants and entered summary judgment in their favor.[2]

## II.

The principal issue raised on appeal is whether the District Court abused its

discretion in excluding the testimony of Appellants' four expert witnesses.  See United

States v. Schiff, 602 F.3d 152, 161 (3d Cir. 2010) (trial court's decision to exclude expert

witness testimony is reviewed for abuse of discretion).  The introduction of expert

opinion testimony is governed by Federal Rule of Evidence 702, under which the

admissibility of expert testimony turns on (1) the qualifications of the expert, (2) the

sufficiency of the data underlying the expert's testimony, (3) the reliability of the expert's

methodology and (4) the expert's application of that methodology to the facts of the case.

See Fed. R. Evid. 702.  For the following reasons, as well as the reasons set forth in the

District Court's cogent memorandum opinion, we conclude that the District Court did not

abuse its discretion in excluding the testimony of Appellants' expert witnesses.

Appellants' most important witness, from the standpoint of proving that they were

exposed to carbon monoxide, was Joseph Cocciardi, an industrial hygienist.  Cocciardi

tested the carbon monoxide levels in the U-Haul truck driven by Appellants by running it

---

[2] Appellants originally named U-Haul International, Inc. and AMERICO as defendants, but they voluntarily dismissed their claims against these two defendants. Additionally, the District Court entered summary judgment in favor of U-Haul of Arizona on the grounds that Appellants' claims against it were preempted by the Graves Amendment, 49 U.S.C. § 30106.  Because we affirm the District Court's determination that Appellants' evidence of causation was inadmissible, we do not address the preemption issue.

for thirty hours (approximately 2.5 hours of which were on the road, with the truck running idle for the remainder of the time). Cocciardi's tests showed (1) that the truck's carbon monoxide emissions were far <u>below</u> the average emission levels for this type of truck, and (2) that the levels in the cab were consistent with safe, naturally occurring levels of carbon monoxide.[3]

Notwithstanding this data, Cocciardi opined that Buzzerd and Courtney had been exposed to carbon monoxide based upon (1) the fact that automobile exhaust does contain such a compound, (2) the fact that the exhaust might have entered the cabin, and (3) the symptoms plaintiffs experienced. But as the District Court correctly reasoned, the first two of these facts are undisputed (and undisputable), the third is a medical diagnosis not within the range of Cocciardi's expertise (as he is not a physician), and, most importantly, in order to reach his conclusion, Cocciardi had to ignore his own data (which showed safe levels of carbon monoxide in the cab). Rule 702 expressly requires that expert testimony be "based upon sufficient facts or data," and here, as the District Court explained, the data directly undermined the principal conclusion Cocciardi drew from it. Fed. R. Evid. 702; see <u>In re TMI Litigation</u>, 193 F.3d 613, 676 (3d Cir. 1999) (an expert's conclusion that flies in the face of the data is the "antithesis of good science"). We conclude that the District Court was well within its discretion to exclude Cocciardi's testimony.

---

[3] In particular, over the course of thirty hours, Cocciardi recorded one isolated reading of carbon monoxide in the cab in the range of five or six parts per million ("ppm"). The United States Environmental Protection Agency's standards indicate that anything short of nine ppm is safe for an eight-hour period, and, indeed, the level of carbon monoxide in the exhaled breath of a non-smoker is between zero and six ppm.

Appellants likewise sought to introduce the testimony of George Meinschein, an engineer and former automobile mechanic. Based on his examination of the truck, Meinschein concluded, in relevant part, that there were pathways through which carbon monoxide might have reached the passenger cabin of the truck. As the District Court explained, however, the central issue that the jury would have been called upon to decide in the case was "not whether there were <u>possible</u> pathways by which emissions <u>could</u> enter the passenger compartment" but was instead "whether it is <u>probable</u> that vehicle emissions <u>would</u> enter the passenger compartment under operating conditions." (App. 16.) Meinschein had no reliable methodology for discerning whether carbon monoxide likely did enter the cabin—as the District Court noted, he "articulated no expertise in the field of aerodynamics or air flow"—and so his testimony did not fit the central question at issue in the case. (<u>Id.</u>); <u>accord</u> <u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 751 (3d Cir. 1994) ("[I]f the plaintiff's . . . expert cannot form an opinion with sufficient certainty so as to make a [professional] judgment, there is nothing on the record with which a [factfinder] can make a decision with sufficient certainty so as to make a legal judgment.") (citation omitted). Moreover, the District Court was certainly correct to note that Meinschein's unsupported opinion that Cocciardi's data "understated" the levels of carbon monoxide in the truck lacked a methodological or factual basis. There was no abuse of discretion in the District Court's exclusion of Meinschein's testimony.

Finally, the District Court did not abuse its discretion in excluding the testimony of Appellants' third and fourth expert witnesses, Drs. Jeffreys and Driscoll. These doctors

concluded that Appellants suffered encephalopathy caused by carbon monoxide exposure. But while the doctors could diagnose encephalopathy, it is undisputed that the condition has any number of potential causes, including viral infections, sleep apnea, and exposure to other toxins. "[S]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 263 (4th Cir. 1999) (emphasis added, citation omitted). The District Court did not abuse its discretion in concluding that although the doctors had a basis to diagnose plaintiffs' conditions, they lacked any scientific basis to testify that carbon monoxide exposure in the U-Haul caused the injuries. See Wintz v. Northrop Corp., 110 F.3d 508, 513-14 (7th Cir. 1997); Allen v. Pennsylvania Engineering Corp., 102 F.3d 194, 198-99 (5th Cir. 1996).

In the absence of admissible expert testimony that exposure to carbon monoxide in the cabin of the U-Haul caused their injuries, Appellants' tort claims were unsustainable. Having concluded that the District Court did not abuse its discretion in excluding the testimony of Appellants' expert witnesses, we agree with the District Court that Appellees were entitled to summary judgment.

**III.**

For the foregoing reasons, we will affirm the District Court's summary judgment order.